**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

John Wiegand,

Plaintiff,

v.

JNR Adjustment Company, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1498 ADM/SRN

---

Matt C. Pierce,

Plaintiff,

v.

JNR Adjustment Company, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1499 ADM/SRN

---

Peter F. Barry, Esq., Barry Law Office, St. Paul, MN, appeared for and on behalf of Plaintiffs John Wiegand and Matt C. Pierce.

John K. Rossman, Esq., Hellmuth & Johnson, PLLC, Eden Prairie, MN, appeared for and on behalf of Defendant JNR Adjustment Company, Inc.

---

## I. INTRODUCTION

On January 17, 2002, the Amended Motions to Dismiss [Doc. Nos. 13 (01-1498) & 14 (01-1499)] of Defendant JNR Adjustment Company, Inc. ("JNR" or "Defendant"), and the Motions to Amend Complaint of Plaintiffs John Wiegand ("Wiegand") [Doc. No. 20 (01-1498)] and Matt C. Pierce ("Pierce") [Doc. No. 21 (01-1499)], were argued before the undersigned United States District Judge. Wiegand and Pierce (collectively "Plaintiffs") sued JNR alleging violations of the Fair Debt

APR 22 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Collection Practices Act ("FDCPA"). On January 23 and 30, 2002, the parties submitted supplemental briefs regarding subject matter jurisdiction, and the matter was taken under advisement. For the reasons set forth below, the Motions to Dismiss are granted.

## II. BACKGROUND

Sometime prior to February, 2001, Wiegand's checkbook was stolen. Am. Compl. ¶ 4.[1] Sometime thereafter, two checks from Wiegand's closed checking account were tendered to Old Country Buffet, ostensibly creating a debt attributable to Wiegand. Am. Compl. ¶ 5. Sometime prior to April, 2000, Pierce's checkbook was stolen. Am. Compl. ¶ 4. Sometime thereafter, a check from Pierce's closed checking account was tendered to Sydney's Restaurant, ostensibly creating a debt attributable to Pierce. Am. Compl. ¶ 5. JNR is the debt collection agency that was retained by Old Country Buffet and Sydney's to collect the alleged debts resulting from the dishonored checks.

In March and April, 2001, both Plaintiffs received a letter from JNR informing them that their checks had been returned and payment refused. Am. Compl. Ex. 1. The letters stated: "We realize it may be an oversight and not your intention to issue a worthless check. However, our client has requested we contact you regarding this matter." Id. The letters identified the creditor to which each check was written, and the "amount owed" for each check. Id. The letters stated that "[p]ayment consists of the check amount plus the posted worthless check charge." Id. Wiegand's letter identified two checks for which the amounts owed were $47.65 and $56.17. Id. Pierce's letter identified one check for which the amount owed was $70.00. Id. These amounts represented the amounts of the checks, plus a $20 worthless check charge.

---

[1] The two Complaints involved are structurally identical. Citations to the Complaint should be regarded as applying to both cases.

The letters also contained the following notice:

> ***Important Notice***
> Unless you notify us within 30 days after the receipt of this letter that the validity of this debt . . . is disputed, we will assume that the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt . . . this office will obtain verification of the debt . . . . . . . **For Minnesota residents the following applies:** If the amount of the dishonored check is not paid within 30 days after receipt of this notice of dishonor, whoever issued the dishonored check is liable for: (1)The amount of the check, the service charge, plus a civil penalty of up to $100 or the value of the check, whichever is greater; (2) Interest . . . and (3) Reasonable attorneys' fees if the aggregate amount of dishonored checks . . . is over $1,250.

Id. (emphasis in original). The parties agree that this letter constitutes a notice of dishonor under Minn. Stat. § 332.50. Def. Mem. in Supp. at 11; Pl. Mem. in Opp. at 3.

Count I of Plaintiffs' Complaints alleges that the sending of this letter constitutes a violation of the FDCPA, 15 U.S.C. § 1692 et seq. Am. Compl. ¶ 20. Plaintiffs assert that the letter violates Minn. Stat. § 332.50 because it was not accompanied by "a copy of this section" as allegedly required by § 332.50, Subd. 2(b)(1), and that such a violation of state law constitutes a prima facie violation of 15 U.S.C. §§ 1692e(5) and 1692f. Id. ¶ 7. Plaintiffs also allege the letter fails to clearly delineate the check amount and fees in violation of § 1692e(2). Id. ¶ 8.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The parties contest federal subject matter jurisdiction. Defendant argues that because the alleged debt results from theft, it does not constitute a "debt" as defined under the FDCPA, 15 U.S.C. § 1692a(5). The FDCPA sets forth that:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family,

or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

Under this definition, a dishonored check is properly a "debt" for FDCPA analysis. See Duffy v. Landberg, 133 F.3d 1120, 1123-24 (8th Cir. 1998); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326-27 (7th Cir. 1997); McCartney, III v. First City Bank, 970 F.2d 45, 47-48 (5th Cir. 1992) (holding that "the validity of the underlying debt is not a bar to suit under the [FDCPA]"); Johnson v. CRA Security Systems, 963 F.Supp. 859, 862 (N.D. Ca. 1997); Byes v. Telecheck Recovery Services, Inc., No. Civ.A. 94-3182, 1997 WL 736692, at *3 (E.D. La. Nov. 24, 1997).[2] "As long as the transaction creates an obligation to pay, a debt is created." Bass, 111 F.3d at 1125.

The next step in the analysis is whether a stolen and forged dishonored check falls within the reach of the FDCPA. The Eighth Circuit has not directly addressed the question. However, a District Court in the Eastern District of Louisiana examined the situation where a bank account was opened with a stolen identification card, and checks written on the account were returned for insufficient funds. Byes, 1997 WL 736692 at *1. The Byes court held that the checks evidenced an obligation to pay for the goods they were used to purchase, and that such obligation remained despite the checks being dishonored. Id. at *2. "The fact that [Plaintiff] did not undertake this obligation herself and might avoid personal responsibility has no effect on the applicability of the [FDCPA]. Attempts to collect invalid or void obligations are covered by the [FDCPA]." Id. Byes satisfied the

---

[2] But see Cederstrand v. Landberg, 933 F.Supp. 804, 806 (D. Minn. 1996) ("A complaint under the FDCPA which fails to allege an offer or extension of credit fails to state a claim under the FDCPA.") (citing Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1168-69 (3rd Cir. 1987)). The Zimmerman holding was later rejected by the Eighth Circuit in Duffy.

definition of a consumer even though she did not personally write the checks to purchase the goods because she was allegedly obligated to pay the debt. Id. The court also held that the issuance of a bad check constitutes a transaction under the FDCPA, even though the imposter might have lacked any intention to pay for the goods. Id. at *3. The same rationale applies to the case at bar.[3]

JNR constructs an argument contesting FDCPA jurisdiction based on the language from Duffy that "an obligation arising from theft cannot be a debt under the [FDCPA] since it does not arise from a consensual transaction for goods or services." Duffy, 133 F.3d at 1124. The Duffy court relied on the holding in Bass that "although a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." Bass, 111 F.3d at 1326. No "transaction" occurs in a direct theft of merchandise or services (such as cable television service, for example). See id. (citing Shorts v. Palmer, 155 F.R.D. 172, 175-76 (S.D. Ohio 1994)); Zimmerman, 834 F.2d 1163; Byes, 1997 WL 736692 at *2. Defendant argues that because the dishonored checks at issue were stolen, no transaction occurred in this case to create a debt. However, unlike in the case of direct theft, where, as here, someone steals a check and then tenders the check for goods or services, the fact pattern in the case at bar, the "check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains." Bass, 111 F.3d at 1325.

JNR asserts that an alleged obligation arising from the commission of a crime is not a debt. However, "[d]ishonored checks are only criminal or tortious when the drawer knows or intends the

---

[3] In Johnson, supra, another District Court held a debt was created in a case with a stolen and forged check, though the theft was not discussed as a basis for the decision.

check to be dishonored at the time it is written." Duffy, 133 F.3d at 1124; see also Bass, 111 F.3d at 1329; Minn. Stat. § 609.535, Subd. 2 ("Whoever issues a check which, at the time of issuance, the issuer intends shall not be paid, is guilty of issuing a dishonored check."). There is no exception in the FDCPA for situations of fraudulent intent in creating a debt. Byes, 1997 WL 736692 at *3. "[C]ourts generally will not create a fraud exception where none exists in the test of the statute." Duffy, 133 F.3d at 1124.

Absent Eighth Circuit precedent on the matter, the Byes logic is persuasive, although it was not reviewed by an appellate court. JNR has cited no controlling case law to the contrary result. Therefore, the alleged obligation resulting from stolen and forged dishonored checks is properly a "debt" within the ambit of the FDCPA. Subject matter jurisdiction is properly established.

**B. Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the non-moving party. Ossman, 825 F. Supp. at 880.

A complaint should be dismissed "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which

the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey, 44 F.3d at 671.

**C. The Motions to Dismiss**

Plaintiffs contend that JNR violated Minn. Stat. § 332.50 by failing to include a copy of the statute along with the letters they received. Minn. Stat. § 332.50 sets forth regulations regarding the issuance of a worthless check:

> (a) A service charge . . . may be imposed immediately on any dishonored check . . . regardless of mailing a notice of dishonor, if notice of the service charge was conspicuously displayed on the premises when the check was issued.
>
> (b) If the amount of the dishonored check is not paid within 30 days after the payee or holder has mailed notice of dishonor pursuant to section 609.535 and a description of the penalties contained in this subdivision, whoever issued the dishonored check is liable to the payee or holder of the check for:
>
> (1) the amount of the check, the service charge as provided in paragraph (a), plus a civil penalty of up to $100 or the value of the check whichever is greater. . . . A payee or holder may make a written demand for payment of the civil liability by sending [the issuer] a copy of this section and a description of the liability contained in this section . . . . Notice as provided in paragraph (a) must also include notification that additional civil penalties will be imposed for dishonored checks for nonpayment after 30 days . . . .

Minn. Stat. § 332.50, Subd. 2(a) and (b) (2001).

Pursuant to this statute, an issuer is liable for the amount of a dishonored check plus the posted service charge immediately, even without notice of dishonor. In this case, Plaintiffs received notice of dishonor describing this alleged obligation, and inviting them to dispute the validity of the alleged debt by contacting JNR. The statute sets forth that after 30 days of nonpayment on such an alleged debt, additional penalties attach. Plaintiffs argue JNR failed to send a notice of dishonor that

included a description of the penalties contained in § 332.50, as required by § 332.50.[4]

Defendant's letters did include a description of the penalties contained in § 332.50. The letter only demanded payment for the check amounts and service charge. The letter clearly stated that Plaintiffs could dispute the alleged debt.[5] Section 332.50, Subd. 2(b)(1) states that notice as provided in paragraph (a), which allows immediate imposition of a service charge in addition to the check amount, must also include notification that additional civil penalties will be imposed for dishonored checks for nonpayment after 30 days. The check amount and service charge are the amounts Defendant was seeking in its letter to Plaintiffs. Defendant's letter accurately outlines in accordance with § 332.50 the penalties contained therein, and states that those penalties will attach only "if" the amount is not paid. Am. Compl. Ex. 1.

Section 332.50, Subd. 2 (b)(1) states that a written demand for payment of the "civil liability" requires inclusion of "a copy of this section." The civil liability is identified as a "civil penalty of up to $100 or the value of the check, whichever is greater." Id. Because Defendants were not

[4] Section 609.535 states that "[n]otice of nonpayment or dishonor that includes a citation to and a description of the penalties in this section shall be sent by the payee or holder of the check to the maker or drawer . . . ." Minn. Stat. 609.535, Subd. 3. The penalties outlined in § 609.535 include imprisonment for various ranges of time or varying levels of fines, or both, depending on the aggregated value of the dishonored checks. Id. at Subd. 2a. Plaintiffs do not contend that Defendant should have included references to these imprisonment penalties specifically. It further appears that such reference would be unnecessary under 15 U.S.C. § 1692e(5), which states that it is an impermissible false or misleading representation for a debt collector to make "[t]he representation or implication that nonpayment of any debt will result in . . . imprisonment of any person . . . unless such action is lawful *and* the debt collector or creditor *intends* to take such action." (emphasis added). Plaintiffs do not allege that Defendant ever intended to pursue imprisonment of Plaintiffs.

[5] Plaintiffs did dispute the debt, notifying JNR that both Plaintiffs had closed the accounts on which the stolen checks were drawn, resulting in the checks being dishonored. JNR does not claim that Plaintiffs are liable for the debts, and is not pursuing payment.

demanding payment of the civil penalty of up to $100, the requirement for sending a photocopy of § 332.50 did not apply to Defendant's letter. Defendant's failure to include "a copy of this section" does not violate § 332.50.

Plaintiffs also allege that Defendant neglected to include a citation to Minn. Stat. § 609.535 in its letter. Strictly construed, Defendant must include a "citation to" § 609.535 in order for Plaintiffs to become liable after 30 days for the "penalties" listed in § 332.50, Subd. 2(b)(1). However, technical compliance with every requirement of the statute is not required as long as drawer receives actual notice of dishonor. See Metro Milwaukee Auto Auction v. Coulson, 604 N.W.2d 111, 116 (Minn. Ct. App. 2000) ("The purpose of the notice requirement is to ensure that the drawer knows that the check has been dishonored and that he might be subject to various statutory penalties and to criminal as well as civil liability unless he pays it."); Minn. Stat. § 332.50, Subd. 3. Moreover, Defendant did not demand payment of the civil penalty authorized by § 332.50, Subd. 2(b)(1), for which such a citation would arguably be necessary.

Plaintiffs further allege that Defendant violated 15 U.S.C. § 1692e(2). This section states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with any debt," including "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). Plaintiffs assert a violation of this provision because the "amount owed" identified on Defendant's letters did not separately delineate the amount of the check and the amount of the service charge, but rather included the aggregate amount of the check and the service charge. However, no requirement that these amounts be separately listed exists in either § 332.50 or the FDCPA. The letters did indicate that the "amount owed" consisted of "the check amount plus the posted worthless check charge." Am. Compl. Ex. 1. To meet the requirements of

§ 332.50, "a debt collector must be explicit regarding the amount owed." Sonmore v. CheckRite Recovery Servs., Inc., 187 F.Supp.2d 1128, 1137 (D. Minn. 2001). Defendant met this requirement by identifying the amount owed and stating its derivation. The language in the letters does not constitute a false, deceptive or misleading representation or means of debt collection.

Finally, Plaintiffs allege Defendant violated 15 U.S.C. § 1692e(5), which prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken. Plaintiffs assert that Defendant's statement to Plaintiffs in the "Important Notice" section of the letters that they would be liable for the civil penalty of up to $100 after 30 days of nonpayment constitutes a threat to take an illegal action because Plaintiffs would not become liable for this penalty without having been sent "a copy of [§ 332.50]," which was not included with the letters.[6] This argument is a silly stretch of the law well beyond its intent. Defendant's "Important Notice" section of the letter does not constitute a "threat" to engage in illegal debt collection practices. To hold that compliance with the requirements in § 332.50, Subd. 2(b)(1) that notification of the possible civil penalties *must* be included in notice under Subd. 2(a), which authorizes debt collectors to seek a service charge in addition to the check amount, would be contrary to the intent of the FDCPA to protect against debt collectors using "unfair or unconscionable means" to attempt to collect any debt. 15 U.S.C. § 1692f. Plaintiffs' attempt to fit an alleged violation of the technical overlapping requirements of various sections of the FDCPA into the category of unconscionable debt collection practices is antithetical to the remedial purposes of the FDCPA. No violation of the

---

[6] Plaintiffs argue that Defendant should have said the issuer of a dishonored check "may" be liable for the statutory penalties after 30 days nonpayment, rather than "is" liable for the penalties. Pl. Mem. in Opp. at 15.

FDCPA was occasioned by Defendant's letters. Defendant's Motions to Dismiss are granted.

Plaintiffs further argue that a violation of § 332.50 constitutes a prima facie violation of the FDCPA, 15 U.S.C. §§ 1692e(5) and 1692f, relying on Picht v. Jon R. Hawks, Ltd., 236 F.3d 446 (8th Cir. 2001). While Picht may stand for the proposition that the FDCPA prohibits the use of debt collection practices that "violate state law" by taking actions that "cannot legally be taken," the point is moot because no underlying violation of Minn. Stat. § 332.50 arose from Defendant's actions.

In light of the dismissal of Plaintiffs' Complaints for failure to state a claim, Plaintiffs' Motion to Amend the Complaint is moot and need not be addressed.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. JNR's Amended Motions to Dismiss [Doc. Nos. 13 (01-1498) & 14 (01-1499)] are **GRANTED**,
2. Plaintiffs' Motions to Amend Complaint [Doc. Nos. 20 (01-1498) & 21 (01-1499)] are **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: April 22, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd